UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COURTNEY DEVLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | CIVIL ACTION NO. |
| | ) | |
| NOBLE ANESTHESIA PARTNERS, | ) | 3:20-CV-3066-G |
| PLLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the defendant's motion for summary judgment (docket entry 54), arguing that the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA") does not apply.  For the reasons set forth below the motion is **GRANTED.**

## I.  BACKGROUND

The plaintiff Courtney Devlin ("Devlin") is a certified registered nurse anesthetist ("CRNA").  Plaintiff's First Amended Complaint ("Complaint") (docket entry 17) ¶ 4.1; Noble Anesthesia Partners, PLLC's Original Answer ("Answer") (docket entry 26) ¶ 4.1.  Devlin was employed by the defendant Noble Anesthesia

Partners, PLLC ("Noble") from February 1, 2017, until October 8, 2018. Complaint ¶ 4.1; Answer ¶ 4.1. The court incorporates its detailed account of the plaintiff's allegations from its earlier opinion in this case. *See* Memorandum Opinion and Order (docket entry 22). In sum, this dispute is about whether Devlin was wrongfully denied FMLA leave and, consequently, wrongfully terminated. See *id*.

On December 22, 2022, Noble filed a motion for summary judgment, arguing that the FMLA does not apply. Noble Anesthesia Partners, PLLC's Motion for Summary Judgment Regarding the Applicability of the Family Medical Leave Act ("Motion") (docket entry 54). First, Noble argues that Devlin did not work enough hours during the 12-month period preceding her request for FMLA leave. Noble Anesthesia Partners, PLLC's Brief in Support of its Motion for Summary Judgment Regarding the Applicability of the Family Medical Leave Act ("Brief in Support") (docket entry 55) at 3; 29 U.S.C. § 2611(2)(A)(ii). Second, Noble argues that it is not subject to the FMLA because it did not employ at least 50 employees within 75 miles of Devlin's worksite for at least 20 weeks in 2017 or 2018. Brief in Support at 3; 29 U.S.C. § 2611(4)(A)(i).

To support its motion, Noble filed two appendixes, Appendix I in Support of Noble Anesthesia Partners, PLLC's Motion for Summary Judgment ("Appendix I to Brief") (docket entry 56); Appendix II in Support Noble Anesthesia Partners, PLLC's Motion for Summary Judgment ("Appendix II to Brief") (docket entry 56-1). The

first appendix includes the declarations of Shannon Bass ("Bass"), who provides

billing services to the defendant, and Dr. Thomas Kenjarski ("Kenjarski"), who is a

co-founder and manager of Noble.  *See generally* Appendix I to Brief.  The second

appendix includes Noble's payroll to support Kenjarski's declaration testimony that

Noble had fewer than 50 employees in 2017 and 2018, *see* Appendix II to Brief at 4-

76.[1]  Noble also files a contact list to which Noble preemptively objects but does not

rely on for summary judgment evidence.  *See* Brief in Support at 9-11 (citing

Appendix II to Brief at 77-78).

On January 26, 2023, Devlin filed her response to the motion, arguing that she

worked sufficient hours, Noble had more than 50 employees, and in the alternative,

she should be entitled to FMLA benefits under an estoppel theory.  Plaintiff's

Response to Defendant Noble Anesthesia Partners, PLLC, Motion for Summary

Judgment and Brief in Support ("Response") (docket entry 59).  To support her

arguments, Devlin filed an appendix including the following:  her declaration, her

work time logged through a phone application called "HoursTracker," the Noble

CRNA employee handbook, Noble's contact sheet, a job advertisement, Devlin's pay

stubs, Kenarjski's deposition, the Second Amended and Restated Company

Agreement of Noble Anesthesia Partners, Bass's deposition, Noble's operations

---

[1]     For consistency, the court cites to the ECF page numbers of Appendix I
to Brief and Appendix II to Brief.

manual, Theodore Anderson's declaration, and the physicians' service agreements with Noble.  Appendix in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment ("Appendix to Response") (docket entry 60).

On March 27, 2023, Noble filed its reply.  Noble Anesthesia Partners, PLLC's Objection and Reply to Plaintiff's Response to Summary Judgment Regarding the Applicability of the Family Medical Leave Act ("Reply") (docket entry 70).  In its reply, Noble objects to Devlin's summary judgment evidence. *Id.* at 1-5.  Noble also argues that Devlin fails to raise a genuine issue of material fact in her response. *Id.* at 6-9.

Noble requested leave to file supplemental summary judgment evidence on March 27, 2023.  Defendant's Motion for Leave to File a Supplement to the Summary Judgment Evidence (docket entry 69).  Devlin did not oppose Noble's request, and the parties agreed that Devlin would be able to file a surreply.  Plaintiff's Response to Defendant's Motion for Leave to File Supplement and Unopposed Motion for Leave to File Response and Surreply to Summary Judgment Evidence (docket entry 72).  The court granted the parties' requests, and the court ordered the defendant to file its supplement by April 6, 2023, and the plaintiff to file her surreply by April 21, 2023.  Order (docket entry 73).  But Noble failed to file its supplement in time.  Devlin filed her surreply on April 21, 2023, in accordance with the court's order.  Plaintiff's Objection and Response to Defendant's Supplemental Summary

Judgment Evidence and Surreply to defendant's Motion for Summary Judgment

("Surreply") (docket entry 74).  Then Noble filed a motion to extend, *see* docket

entry 75, which the court construed as a motion for leave to file the supplement to

summary judgment evidence out of time and granted Noble's motion, *see* docket

entry 77.  Noble then filed its supplemental summary judgment evidence on May 4,

2023.  Defendant's Supplement to Summary Judgment Evidence (docket entry 78).

The motion for summary judgment is now ripe for decision.

II.  ANALYSIS

A.  Objections to the Summary Judgment Evidence

Noble objects to several exhibits that Devlin refers to in her declaration and

argues that these exhibits should not be considered on summary judgment.  Reply at

1-5.  Devlin also objects to Noble's supplemental evidence.  Surreply at 1-5.  The

court will address these objections in turn.

1.  *Noble's Objections*

First, Noble objects to Exhibit 1, Appendix to Response at PApp 9-24, which is

a printout of the "HoursTracker" record, Reply at 1.  Devlin avers that she used the

"HoursTracker" application to track the time she entered and left the facilities during

her tenure at Noble to reflect the hours she worked.  Appendix to Response at PApp

4-5.  Noble argues that the court should not consider this evidence because it is

inadmissible hearsay and was not produced until after Noble filed its motion for

summary judgment.  Reply at 1.  Additionally, "the time that Devlin claims to have been in the facility does not equate to 'hours of service' under the [FMLA]."  *Id.* at 1-2.  The court will not address the last argument here because it is not an evidentiary objection.

Noble impeaches the reliability of Exhibit 1 in several ways.  Noble impeaches Exhibit 1 by contending that it is inconsistent with Noble's own records because Devlin claimed to have worked even when no anesthesia services were provided by Devlin.  *Id.* at 2 (citing Appendix I to Brief at 4).  Noble also contends that Exhibit 1's record of 24-hour shifts is inconsistent with Devlin's testimony in a parallel state case, where Devlin testified that she was not assigned to overnight calls due to medications she was taking.  Reply at 3 (citing Exhibit A, *attached to* Defendant's Supplement to Summary Judgment Evidence (docket entry 78-1)).[2]  Noble argues that Exhibit 1 is unreliable because it claims Devlin worked longer than the length of the anesthesia procedures.  Reply at 3 (citing Appendix I to Brief at 4-7).  Furthermore, Noble contends that Exhibit 1 is flawed because it lacks GPS data and corresponding metadata, "which provides date and time for each entry, as well as the date and time for any edits to such entries."  Reply at 4.  Noble offers Kenjarski's

---

[2]         The Reply cites to docket entry 69, *see* Reply at 3, but the court had not yet granted Noble leave to file supplemental summary judgment evidence, *see* Order (docket entry 73).  Because the evidence was not properly before the court, the court cites to docket entry 78.

declaration to demonstrate the ability to "manipulate and enter data at a time and date potentially years after the entry was claimed to have been made."  Reply at 4.

The court overrules Noble's objections to Exhibit 1.  Regarding hearsay, the court will not exclude Exhibit 1 on hearsay grounds.  Summary judgment evidence must be admissible at trial, and thus, the evidence may not be based on hearsay. *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995).  Noble argues that Exhibit 1 is hearsay, but according to Devlin's declaration, Devlin contemporaneously input her hours to represent a present sense impression.  Appendix to Response at PApp 4; Surreply at 2-3.  Devlin's declaration sets out facts that would make Exhibit 1 admissible at trial under Federal Rule of Evidence 803(1), the present sense impression exception to the hearsay rule.  Next, to the extent that Noble impeaches and implies that Exhibit 1 is a sham and otherwise is unreliable, Reply at 1 ("notably were not produced until [ ] after Noble filed its motion for summary judgment . . ."), Noble fails to meet the high standard to exclude Devlin's declaration as sham testimony.  Devlin's declaration attests to the accuracy of the HoursTracker, Appendix to Response at PApp 4-5, and Noble impeaches Devlin's declaration with her prior deposition testimony, *see* Reply at 3-4.  The court is not convinced that Devlin's declaration and her proffered exhibit amounts to a sham under Fifth Circuit precedent.

The sham affidavit doctrine prevents parties from being able to "defeat a

motion for summary judgment using an affidavit [or declaration] that impeaches, without explanation, sworn testimony." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) (citations omitted).   But when an affidavit, or declaration, "merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment." *Id.* at 496.   In the Fifth Circuit, a later affidavit is supplementary when the prior deposition does not thoroughly review the disputed issue.   See *Clark v. Resistoflex Company, A Division of Unidynamics Corp.*, 854 F.2d 762, 766-67 (5th Cir. 1988) (holding the affidavit was not a sham because the deponent "was not asked to exhaust his recollection" and "had no occasion to reveal" information included in his affidavit, which supplemented, rather than contradicted, his earlier testimony).   The court's role is to determine whether the later affidavit is "so markedly inconsistent with the affiant's prior deposition as to constitute an obvious sham." *Id.*   The sham affidavit doctrine does not apply when inconsistencies between an affidavit and other testimony "can be reconciled such that the statements are not inherently inconsistent." *Seigler v. Wal-Mart Stores Texas, L.L.C.*, 30 F.4th 472, 477 (5th Cir. 2022).

Several of Noble's reliability arguments center around inconsistencies between Noble's summary judgment evidence and Devlin's, which implies an issue of fact, not sham testimony.   Reply at 2-3 ("Additional issues with Exhibit 1 include . . . claiming

hours when no anesthesia services were provided by Ms. Devlin."). The only inconsistency between Devlin's own testimony is whether Devlin worked any overnight – or 24-hour – shifts. Reply at 3 ("The entries contained in Plaintiff's time records at or near 24 hours and the statements in her declaration that she 'often worked 24 hour shifts' are contradicted by testimony she provided in a state court matter Cause No. 20-08888."). This inconsistency is also insufficient to render Devlin's declaration a sham because the inconsistency "can be reconciled such that the statements are not inherently inconsistent." See *Seigler,* 30 F.4th at 477. In Devlin's deposition in a Texas state court, Devlin testified that she was "not required to take overnight call[s]" due to her medication. Exhibit B, *attached to* Defendant's Supplement to Summary Judgment Evidence (docket entry 78-2) at 13. This is not "so markedly inconsistent with the affiant's [ ] deposition as to constitute an obvious sham," *Clark*, 854 F.2d at 766, because logically, Devlin could not be required to take overnight calls but might opt to do so. Consequently, the court overrules the objection.

Second, Noble objects to Exhibit 4, which is titled "Noble's Contact Sheet[.]" Reply at 4-5; Appendix to Response at PApp 56-57. Noble contends that Exhibit 4 is inadmissible hearsay. Reply at 5. Noble also argues that Exhibit 4 is not "competent summary judgment evidence" for the following reasons: it is not dated, it does not contain details regarding listed individual's relationship with Noble, and it does not

contain details regarding the individual's employment location, all of which are required to determine whether Noble is a subject to the FMLA. *Id.* In response, Devlin contends Exhibit 4 was given to her by Noble and is, therefore, admissible.[3] Surreply at 4-5. As stated above, summary judgment evidence may not be based on hearsay. *Fowler,* 68 F.3d at 126. Although Noble fails to explain how Exhibit 4 is hearsay, the court recognizes the possibility of double hearsay with business records. Double hearsay in the context of business records exists "when the record is prepared by an employee with information supplied by another person." *Wilson v. Zapata Off-Shore Company*, 939 F.2d 260, 271 (5th Cir. 1991). Double hearsay is excused by Federal Rule of Evidence 803(6) "if both the source and the recorder of the information, as well as every other participant in the chain producing the record, are acting in the regular course of business." *Id.* (citation omitted). Although the parties do not brief the court on the business record exception, the court overrules Noble's objections to Exhibit 4 because collecting the contact information of employees and affiliates is well-within the regular course of business. Additionally, Noble's remaining arguments are substantive and go to the merits of the motion instead of evidentiary, and therefore, those arguments are inapposite here. *See* Reply at 4-5 ("Exhibit 4 . . . is not dated; [ ] it does not contain any details regarding the listed

---

[3]     Admission by party opponent would be insufficient to resolve the double hearsay issue because the source of the information would be hearsay under Federal Rule of Evidence 805.

individuals' relationship with Noble (i.e. independent contractor or employee) – or if they were still employed, [ ] it does not contain any details on any single individual demonstrating that they worked the required minimum 20 weeks to establish that they are to be included as an employee . . . it does not contain any details regarding their employment location.") (emphasis omitted).

Third, and finally, Noble objects to Exhibit 5, which is an emailed copy of a job posting to Gaswork.com.  Reply at 5; Appendix to Response at PApp 58-63. Noble contends that Exhibit 5 is hearsay because it is an email sent from support@GasWork.com to Devlin's personal email account.  Reply at 5.  Noble also objects to the exhibit because the posting has not been authenticated.  *Id.*  Devlin argues that Kenjarski admitted that the exhibit is a "description of a job that [Noble] would have posted for a full-time CRNA in DFW."  Surreply at 5 (citing to Exhibit J, *attached to* Surreply (docket entry 74-4) at 4).  Exhibit 5 runs into another double hearsay issue because GasWork sent Devlin a copy of the job post.  The court concludes because there is no hearsay exception for Gaswork's statement to Devlin, Noble's objection should be sustained.  Thus, the court will exclude Exhibit 5 from consideration in ruling on Noble's motion for summary judgment.

2.  *Devlin's Objections*

In her surreply, Devlin objects to Kenjarski's supplemental declaration. Surreply at 1-2.  First, Devlin argues that Paragraphs 3 through 9 of Kenjarski's

declaration are irrelevant, prejudicial, and improper lay opinion.  *Id.*; Exhibit A,

*attached to* Defendant's Supplement to Summary Judgment Evidence ("Exhibit A")

(docket entry 78-1) ¶¶ 3-9.   And second, Devlin contends that Paragraph 11 should

be excluded because Kenjarski does not represent whether he has personal knowledge

to the alleged statement by John Paul Schreiner ("Schreiner"), and any emails from

Schreiner should be excluded because they have not been disclosed by the defendant

under Rule 26.  *Id.*; Exhibit A ¶ 11; Exhibit A at 33-34.

      In Paragraphs 3 through 9, Kenjarski avers how one could fabricate Devlin's

hours *post hoc* in the HoursTracker application to create the plaintiff's Exhibit 1.

Exhibit A ¶¶ 3-9.  Devlin first objects to this testimony's relevance because it reflects

Kenjarski's use of the HoursTracker application in 2023, five years after Devlin was

terminated.  Surreply at 1.  Evidence that "has any tendency to make a fact more or

less probable than without the evidence" is relevant.[4]  FED. R. EVID. 401(a).  The

therefore court overrules this objection because whether Devlin fabricated her hours

would be relevant at trial.

      Next, Devlin moves to exclude Paragraphs 3 through 9 as prejudicial under

---

    [4]     Although Federal Rule of Civil Procedure 56(c) requires summary
judgment evidence to be "admissible in evidence," the court does not weigh
Kenjarski's supplemental declaration against Devlin's evidence because a court "may
not make credibility determinations or weigh the evidence," *Reeves v. Sanderson
Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000), in ruling on a motion for summary
judgment.

Federal Rule of Evidence 403.  Surreply at 1.  The court overrules this objection because Devlin fails to explain how the evidence's probative value is substantially outweighed by any of Rule 403's prohibited uses.  *See* Surreply at 1-2; FED. R. EVID. 403.

Additionally, Devlin argues that Paragraphs 3 through 9 should be excluded because it is improper expert testimony.  Surreply at 1-2; Exhibit A ¶¶ 3-9.  Lay testimony, as opposed to expert testimony, is "not based on scientific, technical, or other specialized knowledge[.]"  FED. R. EVID. 701(c).  Based on Kenjarski's declaration, *see* Exhibit A ¶ 3-9,  the court concludes there is sufficient foundation that Kenjarski's testimony is "rationally based on the witness's perception," FED. R. EVID. 701(a).  The court overrules this objection because Kenjarski's explanation of the HoursTracker application and other internet services is not expert testimony.

Devlin also objects to portions of Paragraph 11 for lack of personal knowledge.  Surreply at 2; Exhibit A ¶ 11.  Devlin contends that "Kenjarski does not represent whether he has personal knowledge as to this alleged statement by John Paul Schreiner[.]"  *Id.*  The court overrules this objection because Kenjarski averred at the beginning of the declaration "that the following facts are within [his] personal knowledge," and neither the record nor Devlin raises an issue why Kenjarski would not have personal knowledge of this communication.  See *id*; Exhibit A ¶ 11, at 33-34.

Devlin further argues that portions of Paragraph 11 should be excluded because Kenjarski was not part of the communication between Dr. Joel Ciarochi ("Ciarochi") and Devlin.[5]  Surreply at 2; Exhibit A ¶ 11 .  The court sustains this objection because Kenjarski would not have personal knowledge of a communication between two other people without hearsay implications, and thus, this portion of the declaration is excluded from consideration in ruling on the motion for summary judgment.

Lastly, Devlin argues that any emails from Schreiner should be excluded because they were not previously disclosed under Federal Rule of Civil Procedure 26. Surreply at 2.  Because Devlin fails to substantiate when or why this evidence should have been disclosed under Rule 26, the court overrules this objection.  Assuming *arguendo* that the Schreiner email should have been included in the initial disclosures, Noble was not required to do so under Rule 26(a)(1)(A)(ii) because this email's use is solely for impeachment of Devlin's estoppel theory, which is related to Schreiner's paternity leave.  Appendix to Response at PApp 3 ("Dr. Ciarochi . . . told [Devlin] that Noble was a family, and that there was a male CRNA who had a child with a medical issue who had taken leave . . . that he did not have to use vacation time, that

---

[5]        Devlin in her Surreply refers to "the communications between Ciarochi and Phillips," *see* Surreply at 2, but Paragraph 11 only discusses an email between Ciarochi and Devlin, *see* Exhibit A at 2.  Therefore, the court construes this argument as relating to the email between Ciarochi and Devlin.

they gave him paid leave outside of the FMLA benefit which Noble offered . . . The fact that Noble offered paid leave as well as FMLA leave were considerations that I considered before accepting Noble's employment offer.").

### B.  Evidentiary Burdens on Motions for Summary Judgment

Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a), (c)(1).[6]  A fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham.").  To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586  (1986).  The nonmoving

---

[6]      Disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

party must show that the evidence is sufficient to support the resolution of the material factual issues in her favor. *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)).

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)). It is not, however, incumbent upon the court to comb the record in search of evidence that creates a genuine issue as to a material fact. See *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). The nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts. *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

## C. FMLA

The FMLA allows eligible employees working for covered private-sector employers to take temporary leave, *inter alia*, because of a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612 (a)(1)(D). An eligible employee is granted the right, under certain circumstances, to take up to 12 workweeks of leave in a 12-month

period.  *Id.* § 2612(a)(1).

To protect eligible employees' rights, the FMLA also prohibits the following:
First, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the
exercise of or the attempt to exercise, any right provided."  *Id.* § 2615(a)(1).  Second,
"[i]t shall be unlawful for any employer to discharge or in any other manner
discriminate against any individual for opposing any practice made unlawful" under
the FMLA.  *Id.* § 2615(a)(2).  Finally, Section 2615(b) prohibits persons from
interfering with proceedings or inquiries related to the FMLA.  *Id.* § 2615(b).

For the FMLA to apply, however, the employee must be eligible and her
employer must be an "employer" under the FMLA.  An employee is eligible if she has
been employed:  (1) for at least 12 months by the employer from whom she is
seeking leave, and (2) has worked at least 1,250 hours of service during the previous
12-month period.  *Id.* § 2611(2)(A).  Under the FMLA, an "employer" is "any person
engaged in commerce or in any industry or activity affecting commerce who employs
50 or more employees for each working day during each of 20 or more calendar
workweeks in the current or preceding calendar year."  *Id.* § 2611(4)(A)(i).  The
FMLA excludes from "eligible employee" status "any employee of an employer who is
employed at a worksite at which such employer employs less than 50 employees if
the total number of employees employed by that employer within 75 miles of that
worksite is less than 50."  *Id.* §2611(2)(B)(ii).  The FMLA's "employee-numerosity

requirement is an element of the claim, not a limit upon the federal-court's subject-matter jurisdiction." *Minard v. ITC Deltacom Communications, Inc.*, 447 F.3d 352, 353 (5th Cir. 2006). Here, the parties dispute whether Devlin is an eligible employee and whether Noble is an "employer" under the FMLA, thus affecting whether Devlin has a claim against Noble.

### 1. *Eligible Employee*

Noble argues that Devlin is not an eligible employee because she did not work enough hours before requesting leave. Brief in Support at 6. As stated above, an eligible employee must work 1,250 hours in the 12-month period prior to requesting leave. 29 U.S.C. § 2611(2)(A). The parties agree that that period is between September 13, 2017, and September 12, 2018 ("the qualification period"). *See* Brief in Support at 6; Response at 21. To support its argument, Noble relies on Bass's declaration, which avers that Devlin has only worked 948 hours during the qualification period. Brief in Support at 6 (citing Appendix I to Brief at 4-7).

According to her declaration, Bass provided bookkeeping and anesthesia billing services to Noble. Appendix I to Brief at 4. Bass "was tasked with obtaining the number of hours worked by Courtney Devlin during the 12 months beginning September 13, 2017, and September 12, 2018[.]" *Id.* Although Devlin's pay stubs indicate she worked 40 hours per week, Bass avers that Devlin's pay stubs cannot accurately account the actual hours worked because Devlin's pay was not based on

- 18 -

hours worked as a salaried employee. *Id.* Instead, Bass had to calculate Devlin's work hours by reviewing anaesthesia procedure records during the qualification period. *Id.* at 5.

In doing so, Bass calculated the hours Devlin worked each day from September 13, 2017, through December 31, 2017 separately because Noble does not have access to its old billing systems' data. Appendix I to Brief at 5. Bass had to review the physical anesthesia records for each procedure Devlin provided anesthesia services. *Id.* To calculate hours worked during the latter portion of 2017, Bass would include the time from the beginning of the first procedure to the end of the final procedure of each day. *Id.* Bass did not deduct time in between procedures. *Id.* Additionally, the records Bass reviewed were created by Devlin and reflect her time entries for the anesthesia procedure's start and end times and reflect her work hours for the procedures "unless she took over for another CRNA after the procedure began, or if another CRNA took over for Ms. Devlin after the start of the procedure." *Id.* at 5. Bass did not "attempt to deduct time from any procedure in which either Ms. Devlin took over for another CRNA or in which another CRNA took over for Ms. Devlin during a procedure." *Id.* at 5-6. Bass states that "[w]hile this would result in some inaccuracy associated with the calculation, it would only inflate the number of hours calculated for Ms. Devlin, not decrease the hours . . . ." *Id.* at 6. For this portion of the qualification period, Bass calculated that Devlin worked approximately 328 hours

- 19 -

and 16 minutes.  *Id.*

For the remainder of the qualification period, January 1, 2018, through September 12, 2018, Bass was able to directly access the anesthesia billing records through Noble's billing company OEBA.  Appendix I to Brief at 5-6.  To review these records, Bass printed a report for all time billed by Devlin.  *Id.* at 5.  This report includes the location services were provided, date of service, number of procedures performed for that date of service, and length of time for each of the procedures.  *Id.* According to Bass, Devlin billed and worked 620 hours and 32 minutes during this time period.  *Id.* at 6.  In total, Bass estimates that Devlin worked 948 hours and 14 minutes during the qualification period – below the 1,250 hour requirement.  *Id.*

In turn, Devlin disputes Noble's calculation and offers her own declaration and exhibits to support that she had worked 1,506 hours during the qualification period. Response at 27.  In her declaration, Devlin avers that she downloaded the HoursTracker application on her phone "because Noble did not have a time clock or any method to track hours worked" and she "immediately began using the HoursTracker and clocking in and out every day that [she] worked as [she] entered and left the facility."  Appendix to Response at PApp 4.  Devlin also avers that Bass's calculations are not accurate because the anesthesia procedure records are not a complete account of all the hours Devlin worked.  *Id.* at PApp 5.  Bass's calculations relied solely on "anaesthesia minutes which do not take into account" preparation

time, "time for Preoperative assessments, or time [she] spent providing support for Noble's cases in the Post Anesthesia Care unit after the anaesthesia time ended." *Id.* Nor does Bass account consider "the hours during which [Devlin] was required to remain at the facility waiting on other cases to start and/or before [she] was given permission to leave." *Id.*  Additionally, Devlin avers that from October 2017 and March 2018, she worked "in-house" at a hospital, often working 24-hour shifts, none of which are shown on Bass's calculations.[7]  *Id.*  Devlin also argues that her pay stubs evidence that she worked 40 hours per week.  Response at 27 (citing Appendix to Response at PApp 64-86).

Upon review of the arguments and the record, the court concludes that an issue of fact exists regarding many hours Devlin worked during the qualification period.  The parties offer competing declarations and records, and Devlin has demonstrated that there is more than "some metaphysical doubt as to the material facts."  See *Matsushita Electrical Company*, 475 U.S. at 586.  Devlin's declaration raises factual issues with Bass calculation that could lead a reasonable juror to render judgment in her favor, including, *e.g.*, that Bass solely relies on anesthesia procedure records that do not account for preparation time and other job duties.  Consequently,

––––––––––––––––––––

[7]      Noble disputes that Devlin worked 24-hour shifts, *see* Reply at 3, but as explained *supra*, the discrepancy, if any, does not amount to sham testimony, and thus, the court considers Devlin's testimony that she worked 24-hour shifts from October 2017 to March 2018.

Noble is not entitled to summary judgment on this issue.

### 2. *"Employer"*

The parties next dispute whether Noble is a employer as defined in the FMLA.

Noble argues that it has never employed "50 employees for each working day during

each of 20 or more calendar work weeks" in the current or preceding calendar year.

29 U.S.C. § 2611(4)(A)(I); Brief in Support at 8-9.  Noble contends it employed a

"maximum of [ ] 30 employees for 2017 and 2018."  Brief in Support at 11.  To

support this, Noble offers its payroll records for the years 2017 and 2018.  Brief in

Support at 9 (citing Appendix II to Brief at 4-77).  Preemptively, Noble also argues

that the plaintiff cannot rely on Exhibit 4, the contact list discussed *supra,* because

the exhibit does not demonstrate employment of anyone for 20 weeks or that the

individuals were employed within 75-miles of Devlin's place of employment.  *Id.*

(citing to Exhibit C, *attached to* Plaintiff's First Amended Complaint (docket entry 17-

3)).[8]  Exhibit 4 includes 28 physicians, and according to Noble, four physicians are

listed twice.  Brief in Support at 9.  But Noble argues that it did not employ any

---

[8]     Noble cites to this document as docket entry 11-3, *see* Brief in Support
at 9, but pursuant to the court's order, *see* Order Striking/Unfiling Pleading (docket
entry 12), docket entry 11 was unfiled and re-filed, once leave was granted, as docket
entry 17.  Additionally, the court refers to Noble's contact list as "Exhibit 4" because
the parties' most recent briefing refer to the document as "Exhibit 4."  *See generally*
Response; Reply; Surreply.  Previously, Noble referred to the exhibit as "Exhibit C" in
its brief, *see* Brief in Support at 9, and Devlin had originally filed the exhibit as such,
*see* Exhibit C, *attached to* Plaintiff's First Amended Complaint (docket entry 17-3)).

physicians in 2017 or 2018 because it entered into professional service contracts with entities wholly owned by the physicians.  *Id.* at 9-10.  Instead, Noble contends that the physicians were independent contractors because Noble did not, *inter alia,* control the manner and means by which the physicians practiced medicine.  *Id.*  Independent contractors are not employees and are not counted towards the "50 or more employees" required to subject an employer to the FMLA.  Brief in Support at 11 (citing 29 C.F.R. § 825.105).  Thus, Noble argues, it is not subject to the FMLA and is entitled to summary judgment on Devlin's claim.

The court concludes that Noble has satisfied its initial summary judgment burden by identifying its payroll records to support there is no genuine material fact issue regarding the number of employees.  The burden then shifts to Devlin to raise a genuine issue of material fact for trial.  See *Celotex Corporation*, 477 U.S. at 323-24.

To raise a fact issue, Devlin relies on Exhibit 4, the contact list of physicians affiliated with Noble, to argue that during Devlin's tenure, Noble employed 38 anesthesiologists who should be counted towards the FMLA's 50-employee minimum because they are employees, not contractors.  Response at 12-16.  In her declaration, Devlin avers that Noble distributed Exhibit 4 during her tenure.  Appendix to Response at PApp 7.  Devlin also avers that she worked "at a facility within a 75-mile radius" with 27 physicians, who she lists by name.  *Id.* at PApp 7.1.  To support her response, Devlin furnishes over twenty physician service agreements ("PSAs")

between Noble and its affiliated physicians.  *See generally* Appendix to Response PApp

205-699.  The PSAs are signed by some of the physicians that Devlin asserts that she

worked with during her tenure at Noble.  *See e.g.*, Appendix to Response at PApp

205-224 (Vascoe's PSA).  And PSAs also have effective dates that imply when a

physician first began working with Noble.  See *id.* at PApp 205, 217 (effective in

2018 for a one year term).  But some of the PSAs were effective for a one year term

starting in 2015.  *Id.* at PApp 279, 291 (effective in 2015 for a one year term).  By

the terms of the PSAs, the contract does not automatically renew, *id.* at PApp 291,

and Devlin does not provide any other employment record evidence regarding the

physicians.

      Noble contends that Exhibit 4 is not "competent" summary judgment evidence

because it is not dated, it does not contain details regarding the individual's

employment status with Noble, it does not contain details on whether an individual

worked the minimum 20-weeks in a calendar year, *see* 29 U.S.C. § 2611(4)(A)(i), and

it does not include employment location,  see *id*. § 2611(4)(B)(ii); Reply at 4-5.  The

court agrees with Noble that Devlin has not met her summary judgment burden.

      The court concludes that Devlin has not raised a fact issue whether Noble is

an "employer" as defined by the FMLA.  Devlin argues that the anesthesiologists

affiliated with Noble should be counted towards the 50-employee minimum.

Response at 12-16.  But Devlin failed to produce evidence to raise a factual dispute

on the remaining prongs of section 2611(4)(B)(ii).  Specifically, Devlin has failed to

produce evidence that shows that any given physician, whether employee or

independent contractor, worked the minimum 20-weeks required by the FMLA in

2017 or 2018.  *See* 29 U.S.C. §  2611(4)(A)(i).  Devlin merely offers in her

declaration that she worked with 27 physicians during her tenure at Noble.  *See*

Appendix to Response at PApp 7.1.  And the PSAs provide only a *potential* start date

for each physician, which do not even show if a given physician worked in 2017 or

2018.  *Id.* at PApp 205-700.  Devlin did not, for example, submit evidence about the

frequency that she worked with a physician that would evidence a sustained

employment relationship between a given physician and Noble.  See *id.* at PApp 7.1.

Exhibit 4, Noble's purported contact list, cannot evidence 20-week employment

because it is undated, see *id.* at PApp 56-57, and Devlin only argues that she received

it during her tenure at Noble, Surreply at 4-5.  In fact, Devlin offers no evidence that

any of the physicians worked for 20-weeks in 2017 or 2018 – much less that a

sufficient number of physicians worked at the same time to satisfy the FMLA's

numerosity requirement.  Even if the legal issue of whether the physicians are

employees or independent contractors is set to one side,[9] Devlin has not raised a

---

[9]      Devlin argues the court should apply the Fifth Circuit's four-step
"economic reality" test to determine whether the physicians are employees or
independent contractors.  Response at 11 (citing *Watson v. Graves*, 909 F.2d 1549,
1553 (5th Cir. 1990)(examining "whether the alleged employer (1) has the power to
(continued...)

genuine issue of material fact that Noble employed 50 employees for 20-weeks in 2017 or 2018.  The court cannot, and will not, in the absence of proof "assume that the nonmoving party could or would prove the necessary facts."  *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (en banc) (citing *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990) ("It will not do to 'presume' the missing facts because without them the affidavits would not establish the injury that they generally allege.")).  Consequently, Noble is entitled to summary judgment on this issue.

Without the physicians counting towards the FMLA's 50-employee minimum, Devlin contends that there are at most seven additional employees to be counted.  *See* Response at 16-17 ("Members of Defendant Noble, Kenjarski, Ciarochi and Weiss should be considered employees . . . Plaintiff has also identified at least four more employees . . . .").  Because Devlin contends that Noble employed 33 CRNAs, Response at 12, the additional 7 employees would result in 40 total – still below the

---

[9](...continued)
hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.").  The court doubts that is the correct test to apply because that test determines whether an employment relationship existed, *see Watson*, 909 F.2d at 1553-56 (holding that inmates can be employees in a work-release program for FLSA purposes), which is a separate inquiry from whether an employed individual is an employee or independent contractor, *see Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379 (5th Cir. 2019) (citing *United States v. Silk*, 331 U.S. 704 (1947)) (applying the *Silk* factors to determine if an individual is an employee or independent contractor under the FLSA).

50-employee minimum of the FMLA, *see* 29 U.S.C. § 2611(4)(A)(i).  Moreover,

Devlin does not offer evidence that these additional employees were employed for the

required time period.  See *id.* (requiring "50 employees for each working day during

each of 20 or more calendar workweeks in the current or preceding calendar year").

Therefore, the court will not reach Devlin's remaining arguments relating to Noble's

members and the employees of Ninety Nine Healthcare Management and Anesthesia

Management Systems because it would not affect the outcome of this motion.

### 3.  *Equitable Estoppel*

Devlin contends, however, that even if the FMLA does not apply by statute,

she is still entitled to FMLA benefits under estoppel principles.  Response at 19-21.

Devlin cites *Minard*, 447 F.3d at 357, holding that, in certain circumstances,

equitable estoppel can bar a employer from claiming an employee is ineligible for

FMLA benefits.

The Supreme Court has recognized that under the federal common law,

"[e]stoppel is an equitable doctrine invoked to avoid injustice in particular cases."

*Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 59 (1984).

In *Heckler*, the Court adopted the Restatement's definition of estoppel:

> If one person makes a definite misrepresentation of fact to
> another person having reason to believe that the other will
> rely upon it and the other in reasonable reliance upon it
> does an act . . . the first person is not entitled . . . to regain
> property or its value that the other acquired by the act, if
> the other in reliance upon the misrepresentation and

> before discovery of the truth has so changed his position
> that it would be unjust to deprive him of that which he
> thus acquired.

*Id.* (citing RESTATEMENT (SECOND) OF TORTS § 894(1)(1979)).  The Court explained

that the party claiming the estoppel must have relied upon its adversary's conduct "in

such a manner as to change his position for the worse."  *Id.* (citations and internal

quotations omitted).  And that party's reliance must have been reasonable, such that

the party claiming the estoppel "did not know nor should have it known that its

adversary's conduct was misleading."  *Id.* (citations omitted).  Although the

Restatement requires a "definite misrepresentation," the deceiving party does not

need to intend to deceive to be estopped for its misrepresentation.   RESTATEMENT

(SECOND) OF TORTS § 894(1).

  In *Minard*, the Fifth Circuit held an employer could be estopped from claiming

it was not an "employer" under the FMLA.  *Minard*, 447 F.3d at 358.  The employee

had requested FMLA leave to undergo an elective surgery to treat a serious medical

condition.  *Id.* at 354.  The employer granted her request in writing, specifically

stating that she was an "eligible employee" for FMLA leave.  *Id.*  The employee then

took leave to undergo her surgery, but when she returned to work, she was

terminated because her employer had determined during her absence that she was

not eligible for FMLA leave.  *Id.*  The Fifth Circuit held that an employer could be

estopped from claiming the employee was not eligible for FMLA leave based on the

employer's misrepresentations, regardless of the employer's intent. *Id.* And the court remanded the case because there were factual issues whether the plaintiff relied to her detriment based on the availability of alternative treatment plans other than the surgery. *Id.* at 358-59.

Here, Devlin argues that Noble misrepresented the availability of FMLA leave, and under estoppel principles, Devlin is entitled to FMLA benefits regardless of whether Noble is an "employer" under the statute. Response at 19-20. Devlin contends that Noble first represented that she would have FMLA leave in her job interview and she relied on that fact when deciding to work for Noble. *Id.* at 19-20 (citing Appendix to Response at PApp 3-8). Additionally, Devlin contends that she relied on the CRNA handbook that stated: "As provided under the [FMLA], Noble provides unpaid family and medical leaves of absence to eligible employees." *Id.* (citing Appendix to Response at PApp 24-41). Devlin relies on *Minard* for support, as well as *Myers v. Tursso Company, Inc.*, 496 F. Supp. 2d 986 (N.D. Iowa 2007), and *Dooling v. Bank of the West*, No. 4:11-CV-00576, 2013 WL 3776741 (E.D. Tex. July 17, 2013), *report and recommendation adopted*, No. 4:11-CV-00576, 2013 WL 12403524 (E.D. Tex. Sept. 30, 2013).

The court is not persuaded by Devlin's arguments regarding *Minard* and *Dooling*. Both cases involve affirmative misrepresentations where the employer informed the employee that she was entitled to FMLA leave but subsequently

changed its assessment.  See *Minard*, 447 F.3d at 354 ("[The employer] granted Ms. Minard's request for FMLA leave in a written memorandum . . ."); see also *Dooling*, 2013 WL 3776741, at *5 ("[Employer's representative] told Plaintiff that she 'possibly would be eligible for FMLA' and that 'if Plaintiff had accrued (earned) sick leave and vacation time, she should be paid for her time off.'").  In contrast, Devlin was immediately informed by Kenjarski that she did not qualify for FMLA leave when she requested time off for her surgery.  *See* Appendix to Response at PApp 44-46.  Unlike the facts in *Minard* and *Dooling*, Devlin was not told that she was eligible, see *Minard*, 447 F.3d at 354, or possibly eligible for FMLA leave, see *Dooling*, 2013 WL 3776741, at *5.

Devlin's reliance on the availability of FMLA leave in the CRNA handbook is similarly unpersuasive.  The *Myers* opinion, which involves reliance on an employee handbook, is distinguishable and highlights why Devlin's argument is unavailing.  See *Myers*, 496 F. Supp. 2d at 999-1000.  The plaintiff Myers read in an employee handbook that he had FMLA benefits; so Myers thought he was taking FMLA leave when he took leave for an illness.  *Id.*  In truth, Myers was not eligible for FMLA leave because his office was remote and did not have enough employees, but he took leave without discussing the issue or his illness with his employer.  *Id.*  When Myers returned from leave, he was terminated.  *Id.*  The *Myers* court held a fact issue existed whether Myers reasonably relied on the handbook that represented that employees

were eligible for FMLA leave.  *Id.*  Here, Devlin does not offer evidence of how she

changed her position to her detriment based on the CRNA handbook.  It is

undisputed that she received the handbook after she began working at Noble, so it

could not have induced Devlin into accepting the position.  *See* Appendix to

Response at PApp 4.  And Noble's CRNA handbook states:  "[t]his policy is in effect

only where Noble is a covered employer under applicable federal law."  *Id.* at PApp

39.  The handbook also says, as "provided under the [FMLA], Noble provides unpaid

family and medical leaves of absence to eligible employees."  *Id.*  Devlin does not

show how she relied on this information or how her reliance changed her position to

her detriment.  See *Minard*, 447 F.3d at 358 (quoting Restatement (Second) of

Torts § 894(1)).

     The summary judgment record does not reflect reliance on the availability of

FMLA leave; instead, the record reflects the following sequence of unfortunate

events:  Devlin accepted a position at Noble, Devlin was gravely injured, Devlin

requested time off related to that injury, and Noble terminated Devlin for taking

more leave than allotted.  Devlin's estoppel argument fails because she does show

how she relied on the availability of FMLA benefits, nor how she was harmed by that

reliance.  See, *e.g., Durose v. Grand Casino of Mississippi Inc.*, 251 F. App'x 886, 889

(5th Cir. 2007) (per curiam) ("Durose has offered no testimony that she would have

cut her leave short and come back to work early and in violation of her doctor's

- 31 -

orders had she known that her FMLA leave expired  on April 28, 2003 . . .
Consequently, Durose has failed to establish an FMLA violation because . . . she has
not presented any evidence that she detrimentally relied on [the] letter indicating
that Durose had more leave available."); see also *Minard*, 447 F.3d at 359 (finding
fact issue where the plaintiff asserted "that there were other medical alternatives
available to her . . . and that she would have followed such an alternative course if
[the employer] had correctly informed her that she was not then an 'eligible
employee' under the Act.").  Devlin could have, for example, shown that she would
have altered her treatment plan to conserve her "paid time off," had she known that
FMLA leave was not available.  *See* Appendix to Response at PApp 52-53 (Kenjarski's
email noting that Devlin had already used her "paid time off" for 2018 when she
requested FMLA leave).  Because Devlin does not provide evidence of a change of
position or its harmful effects, she fails to raise a fact issue for her estoppel theory.

　　　　For similar reasons, Devlin's reliance on statements made in her interview also
fails to defeat summary judgment.  Devlin argues that she changed her position by
accepting employment with Noble by reasonably relying on representations in her
interview.  Response at 19-21; Surreply at 7-8.  When she originally accepted the
CRNA job, Devlin avers that Noble represented in her interview that she would have
FMLA benefits and that the benefits were a consideration when she accepted the
position.  Second Declaration of Courtney Devlin, *attached to* Plaintiff's Objection

and Response to Defendant's Supplemental Summary Judgment Evidence and

Surreply to Defendant's Motion for Summary Judgment (docket entry 74-1) at ¶ 2.

But this is insufficient to defeat summary judgment because Devlin was informed

that she was not entitled to FMLA benefits in September 2018.  Appendix to

Response at PApp 42-47 ("Courtney, [y]ou do not qualify for Family Medical Leave

from Noble . . . Noble is not a covered employer under the Family Medical Leave Act

as it does not have enough employees and, therefore, you do not qualify for those

benefits.").  Devlin fails to explain how this reliance would continue to be reasonable

after Kenjarski informed her that she is not entitled to FMLA leave.  *See*

RESTATEMENT (SECOND) OF TORTS § 894(1) ("[I]f the [party] in reliance upon the

misrepresentation and *before* the discovery of the truth has so changed his position

that it would be unjust to deprive him of that which he thus acquired," the

misrepresenting party may be estopped.) (emphasis added).  In considering any

reliance prior to Kenjarski's email, Devlin does not produce evidence, nor even an

argument, that she was harmed by accepting a CRNA position in reliance on the

FMLA benefits.  See, *e.g., Minard*, 447 F.3d at 359 (holding that a fact issue existed

as to whether the plaintiff was harmed by undergoing a (potentially elective) surgery

after she was informed she had FMLA leave).  Thus, assuming that any references to

FMLA benefits in the interview constitute definite representations, the court

concludes there is no genuine issue of material fact as to whether Noble should be

equitably estopped from asserting a defense of non-coverage of the FMLA.

Additionally, several sister courts have required defendant-employers to affirmatively represent that the employee is specifically eligible for FMLA leave in order for *Minard's* estoppel rule to apply.  See, *e.g.*, *Collins-Pearcy v. Mediterranean Shipping Company (USA) Inc.*, 698 F. Supp. 2d 730, 739-40 (S.D. Tex. 2010) (granting summary judgment because there was no evidence that the employer "actually told" the employee that she was eligible for FMLA leave); *Harvey v. Wal-Mart Louisiana* L.L.C., 665 F. Supp. 2d 655, 672-73 (W.D. La. 2009).  Although the court declines to impose such a requirement here, the logical corollary would be that when an employer explicitly states that an employee is ineligible for benefits, the *Minard* estoppel rule cannot apply.  Thus, Devlin's estoppel argument fails, and Noble is entitled to summary judgment.

### III.  CONCLUSION

For the reasons stated above, Noble's motion for summary judgment is **GRANTED** because Devlin has not show that she is entitled to FMLA benefits. Judgment will be entered for Noble.

**SO ORDERED**.

June 12, 2023.

A. JOE FISH
**Senior United States District Judge**